UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| AMTRUST INTERNATIONAL UNDERWRITERS, LIMITED, | Case No. 2:18-CV-652 JCM (VCF) |
|---|---|
| Plaintiff(s), | ORDER |
| v. | |
| CLIFFORD J. FINDLAY, et al., | |
| Defendant(s). | |

Presently before the court is Amtrust International Underwriters's ("Amtrust") motion for summary judgment. (ECF No. 65). Clifford J. Findlay and Donna Sue Findlay, individually and as Trustees, Cliff Findlay and Donna S. Findlay Family Trust, Dated February 20, 1986; Findlay Management Group; Findlay-Nolte Automotive, LLC; Cliff Findlay Automotive, LLC; Findlay Auto Holdings, LLC; Cliff Findlay Auto Center; and Tyler Corder (collectively, "the Findlay defendants") filed a response (ECF No. 69), to which Amtrust replied (ECF No. 77). Defendant Windmill Farms, Inc. ("Windmill") also filed a response (ECF No. 71), to which Amtrust replied (ECF No. 78).

Also before the court is the Findlay defendants' motion for summary judgment. (ECF No. 67). Amtrust filed a response (ECF No. 74), to which the Findlay defendants replied (ECF No. 79). Windmill also filed a response (ECF No. 75), to which the Findlay defendants replied (ECF No. 80).

I.  **Background**

The instant action arises from a dispute regarding insurance coverage as the result of underlying state-court litigation. (ECF No. 4). AmTrust issued a "Euclid Exec policy" to

Findlay Management Group, Inc. for the policy period June 1, 2015, to June 1, 2016. *Id.* at 9. The policy insures against "loss," which includes defense costs. *Id.* at 9–10.

Windmill filed a lawsuit against the Findlay defendants in the Eighth Judicial District Court in Clark County, Nevada. *Id.* at 4. Windmill's state-court complaint alleged, amongst other things, that it did not receive its share of sale proceeds after the sale of two car dealerships—which Windmill owned and managed with the Findlay defendants—and that the Findlay defendants wrongfully denied Windmill an accounting. *Id.* at 5.

After a complete trial on the merits, the state court case was resolved in the Findlay defendants' favor. (ECF No. 28 at 15). The state court judgment included an award of $713,880.86 in attorney fees because the Findlay defendants had made a $1.2 million offer of judgment before trial. (ECF No. 67 at 5).

On the eve of trial in the underlying state court case, Amtrust filed the instant action in this court and filed an amended complaint nine days later. (ECF Nos. 1; 4). Amtrust seeks various declarations of its obligations under its policy with the Findlay defendants. (ECF No. 4). For instance, Amtrust alleges that it is not obligated to extend coverage to Findlay Auto Holdings or Cliff Findlay Auto Center "as each does not qualify as an insured under the policy." *Id.* at 15.

No party to this action filed a motion to dismiss the amended complaint. Instead, the parties filed cross-motions for summary judgment, which the court now considers. (ECF Nos. 65; 67).

## II. Legal Standard

### A. *Dismissal for lack of jurisdiction*

Federal courts are courts of limited jurisdiction. *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978). "A federal court is presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears." *Stock West, Inc. v. Confederated Tribes of Colville Reservation*, 873 F.2d 1221, 1225 (9th Cir. 1989). Thus, federal subject matter jurisdiction must exist at the time an action is commenced. *Mallard Auto. Grp., Ltd. v. United States*, 343 F. Supp. 2d 949, 952 (D. Nev. 2004).

Federal Rule of Civil Procedure 12(b)(1) allows defendants to seek dismissal of a claim or action for a lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Dismissal under Rule 12(b)(1) is appropriate if the complaint, considered in its entirety, fails to allege facts on its face sufficient to establish subject matter jurisdiction. *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 546 F.3d 981, 984–85 (9th Cir. 2008).

Although the defendant is the moving party in a 12(b)(1) motion to dismiss, the plaintiff is the party invoking the court's jurisdiction. As a result, the plaintiff bears the burden of proving that the case is properly in federal court to survive the motion. *McCauley v. Ford Motor Co.*, 264 F.3d 952, 957 (9th Cir. 2001) (citing *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936)). More specifically, the plaintiff's pleadings must show "the existence of whatever is essential to federal jurisdiction, and, if [plaintiff] does not do so, the court, on having the defect called to its attention or on discovering the same, must dismiss the case, unless the defect be corrected by amendment." *Smith v. McCullough*, 270 U.S. 456, 459 (1926).

> Because subject matter jurisdiction goes to the power of the court to hear a case, it is a threshold issue and may be raised at any time and by any party. Fed. R. Civ. P. 12(b)(1). Additionally, the court may *sua sponte* raise the issue of lack of subject matter jurisdiction and *must* dismiss a case if no subject matter jurisdiction exists. Fed. R. Civ. P. 12(h). Thus, even if the question of subject matter jurisdiction is not fully adjudicated or addressed by the parties, "it is axiomatic that this court has a special obligation to satisfy itself of its own jurisdiction ..." *United States v. Touby,* 909 F.2d 759, 763 (3d Cir.1990) (internal citations and quotations omitted).

*Mallard Auto. Grp., Ltd. v. United States*, 343 F. Supp. 2d 949, 952–53 (D. Nev. 2004)

   *B. Mootness*

Article III of the U.S. Constitution limits the jurisdiction of federal courts to "cases and controversies." The "core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992); *see also City of Los Angeles v. Lyons,* 461 U.S. 95, 101 (1983) ("[T]hose who seek to invoke the jurisdiction of the federal courts must satisfy the threshold requirement imposed by Art. III of the Constitution by alleging an actual case or controversy").

"Mootness is a threshold jurisdictional issue." *S. Pac. Transp. Co. v. Pub. Util. Comm'n of State of Or.*, 9 F.3d 807, 810 (9th Cir. 1993) (citing *Sea–Land Serv., Inc. v. ILWU*, 939 F.2d 866, 870 (9th Cir. 1991)). The Supreme Court has described the doctrine of mootness "as the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)." *Arizonans for Official English*, 520 U.S. 43, 68 n.22 (1997) (quoting *United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 397 (1980)) (internal quotation marks omitted). Thus, a case becomes moot when "the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Powell v. McCormack*, 395 U.S. 486, 496 (1969).

> In other words, if events subsequent to the filing of the case resolve the parties' dispute, we must dismiss the case as moot, *see Stratman v. Leisnoi, Inc.,* 545 F.3d 1161, 1167 (9th Cir. 2008); *DHX, Inc. v. Allianz AGF MAT, Ltd.,* 425 F.3d 1169, 1174 (9th Cir. 2005), because "[the court] do[es] not have the constitutional authority to decide moot cases," *Foster v. Carson,* 347 F.3d 742, 747 (9th Cir. 2003) (citation and internal quotation marks omitted).

*Pitts v. Terrible Herbst, Inc.*, 653 F.3d 1081, 1087 (9th Cir. 2011).

### C. Motion for summary judgment

The Federal Rules of Civil Procedure allow summary judgment when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

For purposes of summary judgment, disputed factual issues should be construed in favor of the nonmoving party. *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 888 (1990). However, to withstand summary judgment, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial." *Id.*

In determining summary judgment, a court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, it must come

forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).

By contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party need not establish a dispute of material fact conclusively in its favor. *See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Id.*

In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth, but to determine whether a genuine dispute exists for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the

**James C. Mahan**
**U.S. District Judge**

- 5 -

nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

The Ninth Circuit has held that information contained in an inadmissible form may still be considered for summary judgment if the information itself would be admissible at trial. *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003) (citing *Block v. City of Los Angeles*, 253 F.3d 410, 418–19 (9th Cir. 2001) ("To survive summary judgment, a party does not necessarily have to produce evidence in a form that would be admissible at trial, as long as the party satisfies the requirements of Federal Rules of Civil Procedure 56.")).

### III. Discussion

As an initial matter, Windmill's responses to both motions amount to little more than an attempt to relitigate the issues that were before the state court in the underlying action. (*See* ECF Nos. 71; 75). Windmill argues that it did not approve of any insurance contract with Amtrust and, on that basis, there is a genuine issue of material fact regarding all claims in this case. *Id.* Windmill's argument is unavailing, as it includes no evidence with either response and largely sidesteps the material issues in this case. The court now turns to the substance of this case.

*A. Amtrust's declaratory judgment claims*

The Declaratory Judgment Act "gave the federal courts competence to make a declaration of rights; it did not impose a duty to do so." *Public Affairs Associates v. Rickover,* 369 U.S. 111, 112, (1962). The Declaratory Judgment Act provides, in relevant part, as follows:

> In a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201(a). Thus, by the plain terms of the act, the court "must first inquire whether there is an actual case or controversy within its jurisdiction." *Principal Life Ins. Co. v. Robinson*, 394 F.3d 665, 669 (9th Cir. 2005) (citing *American States Ins. Co. v. Kearns*, 15 F.3d 142, 143 (9th Cir. 1994)).

"If the suit passes constitutional and statutory muster, the district court must also be satisfied that entertaining the action is appropriate." *Gov't Employees Ins. Co. v. Dizol*, 133 F.3d 1220, 1223 (9th Cir. 1998). "This determination is discretionary, for the Declaratory Judgment Act is 'deliberately cast in terms of permissive, rather than mandatory, authority.'" *Id.* (quoting *Public Serv. Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237, 250 (1952) (J. Reed, concurring)).

The court "must decide whether to exercise its jurisdiction by analyzing the factors set out in *Brillhart v. Excess Ins. Co.*, 316 U.S. 491 (1942), and its progeny." *Principal Life Ins. Co.*, 394 F.3d at 669. These factors include: (1) avoiding needless determination of state laws; (2) discouraging litigants from filing declaratory actions as a means of forum shopping; and (3) avoiding duplicative litigation. *See, e.g., Principal Life Ins. Co.*, 394 F.3d at 672; *Gov't Employees Ins. Co.*, 133 F.3d at 1225; *Continental Casualty Co. v. Robsac Indus.*, 947 F.2d 1367, 1371–73 (9th Cir. 1991).

"When a party requests declaratory relief in federal court and a suit is pending in state court presenting the same state law issues, there exists a presumption that the entire suit should be heard in state court." *Chamberlain v. Allstate Ins. Co.*, 931 F.2d 1361, 1366–67 (9th Cir. 1991) (citing *Brillhart*, 316 U.S. at 495). This is particularly true when the only claim that the plaintiff brings is under the Declaratory Judgment Act. *See Snodgrass v. Provident Life & Acc. Ins. Co.*, 147 F.3d 1163, 1167-68 (9th Cir. 1998) (per curiam). In such cases, the court has a compelling reason to let state courts resolve issues of state law. *See, e.g., Continental Casualty Co.*, 947 F.2d at 1371 ("Moreover, this case involves insurance law, an area that Congress has expressly left to the states through the McCarran-Ferguson Act. 15 U.S.C. §§ 1011–12 (1988).").

Here, Amtrust has invoked diversity jurisdiction when filing the instant case. (ECF No. 4). But diversity jurisdiction simply satisfies the first prong of this court's analysis. The court must determine whether it would be appropriate in light of the *Brillhart* factors to entertain the instant action in light of the the underlying state-court case. This inquiry is particularly necessary because "[w]here, as in the case before us, the sole basis of jurisdiction is diversity of citizenship, the federal interest is at its nadir." *Continental Casualty Co.*, 947 F.2d at 1371

First, the court notes that this case—like the case in *Continental Casualty Co.*—involves insurance law, "an area that Congress has expressly left to the states through the McCarran-Ferguson Act. 15 U.S.C. §§ 1011–12 (1988)." 947 F.2d at 1371. There is a parallel proceeding in state court: the underlying state-court action that gave rise to the instant insurance-coverage dispute. Amtrust's obligations under the policy must be determined only because it is potentially liable to the Findlay defendants for attorney fees incurred in the underlying case. Once again, *Continental Casualty Co.* is instructive. The Ninth Circuit in *Continental Casualty Co.* held as follows:

> Often an insurer has brought a declaratory judgment action in federal court against its insured in order to obtain a ruling as to its obligations in relation to a state court action by a third party against the insured. Although the insurer would have been unable to remove the state court action to federal court in most cases due to lack of complete diversity under 28 U.S.C. § 1441(b), there was diversity jurisdiction in the suit for declaratory relief because the insurer and insured were citizens of different states. the ripeness requirement of Article III's "case or controversy" clause precludes the insurer's obtaining a declaratory judgment with respect to its *liability* to the insured in such cases because "the federal relief sought may hinge upon the outcome of state court actions."

*Id.* at 1371–72 (quoting *Ticor Title Ins. Co. of Cal. v. American Resources, Ltd.*, 859 F.2d 772, 777 n.7 (9th Cir. 1988)). Thus, the Ninth Circuit concluded that "[a] declaratory judgment action by an insurance company against its insured during the pendency of a non-removable state court action presenting the same issues of state law is an archetype of what we have termed 'reactive' litigation." *Id.* at 1372.

As in *Continental Casualty Co*, Amtrust filed this action seeking declaratory judgment on the basis of diversity—without asserting any other claims—when the underlying case could not have been removed. Although Amtrust is not a party to the underlying case, a declaration of its obligations under the policy are best addressed by the state court action that determined liability for the underlying case. Indeed, as the Findlay defendants note, Judge Allf has already granted the Findlay defendants' motion for attorneys' fees and made detailed findings regarding the necessity and reasonableness of the fees incurred in the underlying action, which is an issue at the heart of the instant case. (ECF No. 67 at 9–10).

James C. Mahan
U.S. District Judge

- 8 -

Amtrust's tactical decision to litigate in a federal forum by filing the instant suit is necessarily "reactive" litigation. Accordingly, dismissal is warranted because there is a presumption in favor of the state court resolving issues of state law.

In light of the foregoing, the court dismisses Amtrust's complaint seeking declaratory relief *sua sponte*. The pending motions for summary judgment are denied in part as moot insofar as they relate to Amtrust's claims.

### B. *The Findlay defendants' breach of contract claim*

Although Amtrust's complaint is dismissed, the court has non-discretional jurisdiction over the Findlay defendants' counterclaims. The court turns first to the breach of contract claim. The Findlay defendants argue that because they "won the underlying case brought by Windmill, most of AmTrust's coverage arguments are likewise defeated or moot." (ECF No. 67 at 7). While that may be the case, the Findlay defendants' victory in state court also moots their breach of contract claim.

"A breach of contract may be said to be a material failure of performance of a duty arising under or imposed by agreement." *Bernard v. Rockhill Dev. Co.*, 734 P.2d 1238, 1240 (Nev. 1987). Nevada law also requires the plaintiff to show damage as a result of the breach. *Saini v. Int'l Game Tech.*, 434 F. Supp. 2d 913, 919–20 (D. Nev. 2006) (citing *Richardson v. Jones,* 1 Nev. 405, 405 (Nev. 1865)).

Here, the Findlay defendants were represented by the counsel of their choice—Mr. Carroll of Rice, Reuther, Sullivan & Carroll LLP—throughout the underlying litigation. (ECF No. 67-2). The Findlay defendants made an offer of judgment, which Windmill rejected, and was successful in the underlying case. As the Findlay defendants note, Judge Allf made specific findings that counsel's rates and time spent were reasonable. (ECF No. 67 at 9). As a result, "Judge Allf found that counsel's work would have justified higher rates" and "awarded the full amount of fees sought by the Findlay [defendants]." *Id.* at 9–10. Accordingly, the Findlay defendants will be fully reimbursed for Mr. Carroll's representation.

Because the Findlay defendants were awarded their entire defense fees, "events subsequent to the filing of the case [have] resolve[d] the parties' dispute." *Pitts*, 653 F.3d at

1087. The Findlay defendants will recover their attorney fees from Windmill and, as a result, will not have incurred damages as the result of Amtrust's alleged breach of contract. Thus, the breach of contract claim is moot. The court dismisses it accordingly.

*C. The Findlay defendants' breach of the covenant of good faith and fair dealing claim*

"'Where one of the several issues presented becomes moot, the remaining live issues supply the constitutional requirements of a case or controversy' regardless of whether the remaining claims are 'secondary.'" *S. Pac. Transp. Co.*, 9 F.3d at 810 (quoting *Powell*, 295 U.S. at 497); *see also Shell Offshore Inc. v. Greenpeace, Inc.*, 815 F.3d 623, 631 (9th Cir. 2016) ("Even where one issue in a case has been rendered moot, others may remain.").

The breach of contract claim has been mooted by the Findlay defendants' success and award of attorney fees in the underlying action. The breach of the implied covenant of good faith and fair dealing claim has not.

"An implied covenant of good faith and fair dealing exists in every Nevada contract and essentially forbids arbitrary, unfair acts by one party that disadvantage the other." *Frantz v. Johnson*, 999 P.2d 351, 358 n.4 (Nev. 2000)

> With respect to the covenant of good faith and fair dealing, [the Nevada Supreme Court] ha[s] stated that "when one party performs a contract in a manner that is unfaithful to the purpose of the contract and the justified expectations of the other party are thus denied, damages may be awarded against the party who does not act in good faith."

*Perry v. Jordan*, 900 P.2d 335, 338 (Nev. 1995) (quoting *Hilton Hotels v. Butch Lewis Prods.*, 808 P.2d 919, 923 (Nev. 1991)) (alteration omitted).

Within the insurance context, Nevada law provides that "[b]ad faith is established where the insurer acts unreasonably and with knowledge that there is no reasonable basis for its conduct." *Guar. Nat. Ins. Co. v. Potter*, 112 Nev. 199, 206, 912 P.2d 267, 272 (1996) (citing *American Excess Ins. Co. v. MGM Grand Hotels, Inc.,* 729 P.2d 1352, 1354–55 (Nev. 1986)). Because bad faith is found when there is no reasonable basis for the insurer's conduct, an insurer is not liable for bad faith so long as it had a reasonable basis to deny coverage. *Pioneer Chlor Alkali Co. v. Nat'l Union Fire Ins. Co.*, 863 F.Supp. 1237, 1249 (D. Nev. 1994).

Here, there is a genuine and reasonable dispute regarding whether to Findlay Auto Holdings and Cliff Findlay Auto Center are "insureds" for the purposes of the Amtrust policy. The policy obligates Amtrust to "pay [l]oss of a [c]ompany," and defines "company" to mean the named insured and any subsidiary. (ECF No. 65 at 5). The named insured is Findlay Management Group. (ECF No. 65-2 at 3). The subsidiaries expressly include a variety of Findlay-related entities. *Id.* at 62–63. But neither Findlay Auto Holdings nor Cliff Findlay Auto Center are expressly included in the list of subsidiaries. *See id.*

Instead, Findlay Auto Holdings and Cliff Findlay Auto Center are subsidiaries—and, consequently, insured—only if Findlay Management Group had "management control" over them "on or before the inception date of the policy." *Id.* at 16. Clifford J. Findlay and Tyler Corder are managers of Findlay Auto Holdings, not Findlay Management Group. (ECF No. 65 at 10). "CDF Holdings, LLC" is the sole owner of Findlay Auto Holdings, not Findlay Management Group. *Id.* Findlay Auto Holdings is the sole stockholder of Cliff Findlay Auto Center. *Id.* at 11.

Based on the corporate structure and governance of both Findlay Auto Holdings and Cliff Findlay Auto Center, Amtrust reasonably concluded that Findlay Management Group did not have "management control" over either entity. *Id.* However, Amtrust specifically notified the Findlay defendants that they could "provide information that they believed could demonstrate" that Findlay Auto Holdings and Cliff Findlay Auto Center were, in fact, insured under the policy. (ECF No. 65 at 18).

The Findlay defendants in this case argue that Findlay Management Group exerts "indirect management control" over Findlay Auto Holdings and Cliff Findlay Auto Center because there is common management—namely Clifford J. Findlay—amongst the entities. (ECF No. 69 at 11–13). The Findlay defendants contend that this "indirect management control" makes both entities subsidiaries of Findlay Management Group. *Id.*

Thus, this case turns on the complex corporate structure of the Findlay defendants and the reasonable dispute regarding whether Clifford J. Findlay's status as manager of several Findlay entities means that Findlay Management Group has "indirect management control" over Findlay

Auto Holdings and Cliff Findlay Auto Center. Amtrust reasonably concluded that it did not. The Findlay defendants concluded that it did.

These disparate conclusions leave no genuine issue of material fact regarding the bad faith claim. Amtrust had a reasonable basis to deny coverage. Accordingly, the Findlay defendants' breach of the implied covenant of good faith and fair dealing claim fails. The court grants Amtrust's motion for summary judgment as to that claim.

## IV. Conclusion

Accordingly,

The court dismisses Amtrust's complaint for lack of jurisdiction. The court dismisses the Findlay defendants' breach of contract claim as moot. The court grants Amtrust's motion for summary judgment as to the Findlay defendants' breach of the implied covenant of good faith and fair dealing claim.

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that Amtrust's motion for summary judgment (ECF No. 65) be, and the same hereby is, GRANTED in part and DENIED in part, consistent with the foregoing.

IT IS FURTHER ORDERED that the Findlay defendants' motion for summary judgment (ECF No. 67) be, and the same hereby is, DENIED.

The clerk is instructed to enter judgment and close the case accordingly.

DATED February 20, 2020.

_____
UNITED STATES DISTRICT JUDGE